**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROGER GIFFORD,<br>Plaintiff,<br>v.<br>MICHELE HANSON, et al.,<br>Defendants. | No. 2:21-CV-0119-TLN-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil action. Pending before the Court are: (1) Plaintiff's motion, ECF No. 10, for default judgment; (2) Defendants' motion, ECF No. 14, to dismiss; and (3) Defendant's motion, ECF No. 15, to set aside entry of default. All three motions have been briefed and submitted without oral argument.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) Michele Hanson; (2) Robert Puckett, Sr.; (3) Melissa Tulledo; (4) Patricia Brown; (5) Julie Bowles; (6) Kevin Dixon; (7) Clint Dingman; and (8) the Hornbrook Community Services District (HCSD). See id. at 1. Plaintiff alleges the individual defendants are "the Directors, employees, contractors, and/or agents of Defendant Hornbrook

Community Services District. . . ., a public agency. . . ." Id. at 1-2. According to Plaintiff, Defendant Bowles is HCSD's accountant, Defendant Dixon is an "Operator," and Defendants Hanson, Puckett, Tulledo, Brown are HCSD's directors, referred to as the "Board Defendants." See id. 3. Plaintiff alleges Defendant Dingman was an agent of Defendant HCSD in his capacity as "System Operator, shift operator, watermaster, and/or water plant operator." Id. at 10.

1. Facts Alleged

Plaintiff's allegations as against each defendant are outlined below:

a. Hornbrook Community Services District and Board Defendants

Plaintiff sues the Board Defendants in their official capacities and acknowledges that his allegations against them individual are the same as allegations Defendant HCSD. See id. at 8. Plaintiff states at paragraph 18:

> 18. Insofar as allegations in this complaint are made against the "Board Defendants," and/or the individual Board Defendants in their official capacities, it is also Plaintiff's intention to apply those allegations to the HCSD. The Board Defendants' acts (and those acts committed by an other Defendant at their individual or collaborative instruction) as those acts constituted the official policy, procedures, customs, practices, and acts of the HCSD itself.

Id.

Plaintiff alleges Defendant HCSD has a "long history of systemic and chronic administrative and operational dysfunction. . . ." Id. at 7. Plaintiff also claims HCSD maintains "dilapidated and inadequate facilities that violate the Clean Water Act and Safe Drinking Water Act requirements." Id. Plaintiff claims the Board Defendants were aware of the problems and their duties under the law and have "willfully/recklessly failed to comply therewith." Id. at 7-8.

b. Julie Bowles

According to Plaintiff, Defendant Bowles was "an independent contractor who held herself out as an officer, employee, and/or agent of the HCSD. . . and was also acting under the color of law and of her office as Bookkeeper, of the HCSD." Id. at 8. Plaintiff alleges Bowles aided HCSD and the Board Defendants "in the wrongful conduct alleged here. . . by improperly meeting with them individually and serially. . . as a group. . . for purpose of discussing. . . official HCSD-related 'public business. . . .'" Id. at 8-9. Plaintiff also contends

Bowles conspired with the Board Defendants and Defendant Dingman "with the improper diversion of JCSD public funds to Dingman by issuing Dingman 'paysheets' – calculations of amounts purportedly owed to Dingman by the State of California (for taxes), and the Federal Government (for taxes and Social Security, etc.) by the HCSD as submitted by Dingman on 'timecards.'" Id. at 9. Next, Plaintiff alleges that Bowles aided and abetted in ratification of the "wrongful acts and goals of the Board Defendants. . . ." Id. Among these alleged wrongful acts are: (1) improper diversion of HCSD funds to Hanson's private legal defense; (2) failing to properly impose fees and water charges on themselves, friends, and acquaintances of the Board Defendants; (3) failing to impose other fees related to water use; and (4) denying Plaintiff the right to vote. See id. at 9-10.

c. Clint Dingman

Plaintiff claims that Defendant Dingman operated the HCSD water plant. See id. at 10. Plaintiff asserts Dingman conspired with the other defendants in furtherance of "mutual wrongful goals. . . ." Id. According to Plaintiff, Dingman: (1) helped create and submit false government documents; (2) acted to falsify, withhold, and/or destroy public records and government documents to prevent scrutiny and accountability; (3) failed to comply with the Clean Water Act, the Safe Drinking Water Act, and HCSD bylaws; (4) failed to comply with the duties and responsibilities of his position; (5) failed to perform and pass water treatment examinations; (5) failed to permit inspections during normal business hours; (6) illegally resided at the HCSD water plant; (7) falsified time sheets to be paid for work he didn't do; (8) failed to maintain the "creek diversion" of the HCSD; (8) permitted illegal outflow; and (9) failed to read water meters. Id. at 10-11. Plaintiff contends Dingman's conduct was permitted by the Board Defendants. See id. at 11. Finally, Plaintiff alleges Dingman received an improper pay increase. See id. at 12.

d. Kevin Dixon

According to Plaintiff, Defendant Dixon worked for the HCSD as its Chief Systems Operator for HCSD's water treatment facility. See id. at 12. Plaintiff states that, in this capacity, Dixon was in direct control of the daily operations of the water treatment plant and water distributions systems of the HCSD. See id. at 12-13. Plaintiff claims Dixon was

responsible for the supervision of Dingman. See id. at 13. Plaintiff alleges Dixon: (1) failed to maintain use of the "creek diversion" of the HCSD; (2) failed to contain outflow of toxic water; (3) acted in conjunction with the HCSD and Board Defendants to attempt to defraud the state and federal government with respect to taxes; and (4) falsely claimed to be an independent contractor. Id. Plaintiff also claims Dixon "falsely charged the HCSD for purported services, but did not perform then, almost always being absent from HCSD facilities." Id. Finally, Plaintiff claims that Dixon received legal services improperly paid for by the HCSD. See id. at 13-14.

2. Theories of Liability

Plaintiff asserts that the facts alleged, as summarized above, give rise to federal and state law claims, under various theories of liability, as outlined below:

Federal Claims

| | |
|---|---|
| Count I | Violation of Right to Free Speech, Assembly, and Petition. See ECF No. 1, pgs. 15-16. |
| Count II | Deprivations of Due Process and Equal Protection; Unlawful Seizure. See id. at 16. |
| Count III | Conspiracy to Deprive Right to Vote. See id. |
| Count IV | Violation of the Clean Water Act. See id. at 17. |
| County V | Deprivation of Due Process and Equal Protection. See id. |
| County VI | Deprivation of Due Process and Equal Protection. See id. at 17-18. |
| County VII | Deprivation of Due Process and Equal Protection; Right to Vote. See id. at 18. |
| Count VIII | Retaliation. See id. at 18-19. |
| Count XI[1] | Deprivation of Due Process and Equal Protection; Illegal Modification/Ignoring of HCSD Bylaws. See id. at 19-20. |
| Count XII | Violation of Fourth Amendment. See id. at 20. |

/ / /

/ / /

[1] Plaintiff does not include federal law Counts IX or X.

State Law Claims

| | |
|---|---|
| Count I | Violations of HCSD Bylaws. See id. at 20-21. |
| Count II | Negligence. See id. at 21. |
| Count III | Gifts of Public Funds; False Claims; Fraud (as to Dingman). See id. at 21-22. |
| Count V[2] | Gifts of Public Funds (as to Bowles). See id. at 22. |
| Count VI | Wrongful Diversion of, and Gifts of, Public Funds (as to Hanson). See id. |
| Count VII | Gifts, and Waste of, Public Funds (as to Doe defendants). See id. |
| Count VIII | Violation of Article I, section 3, of the California Constitution. See id. at 23. |
| Count IX | Unfair Business Practices (as to Bowles). See id. |
| Count X | Nuisance (as to HCSD, Board Defendants, Dingman, and Dixon). See id. |
| Count XI | Failure to Impose Standby Fee or Collect Due Fees and Taxes. See id. at 23-24. |
| Count XII | Unfair Business Practices (as to Dixon). See id. at 24. |
| Count XIII | Negligence (as to HCSD, Board Defendants, Dingman, and Dixon). See id. |
| Count XIV | Violation of the California Public Records Act (as to HCSD, Board Defendants, and Dixon). See id. |
| Count XV | Willful and/or Negligent Infliction of Emotional Distress. See id. |
| Count XVI | Purported Official Acts of the Board Defendants are Void. See id. at 25. |
| Count XVII | Improperly Unbilled Fees and Charges – Gifts of Public Funds. See id. |
| Count XVIII | Waste of Public Funds (as to HCSD and/or Board Defendants). See id. |
| Count XIX | Violation of the California Public Records Act – Remedy. See id. at 26. |
| Count XX | Violation of the California Public Records Act – Waste of Public Funds. See id. |

[2] Plaintiff does not include any state law Count IV.

Count XXI — Violation of Public Contracts Code, Uniform Construction Costs Accounting Act. See id.

Count XXI[3] — Wrongful Diversion of Water Fees to Non-Production Expenses. See id. at 27.

Attached to Plaintiff's complaint are the following exhibits:

Exhibit A — A copy of HCSD's bylaws, adopted April 18, 2014. See id. at 31-60.

Exhibit B — A copy of a sheet showing the vote tallies of HCSD Resolutions Nos. 14-023 (to adopt new bylaws), 14-024 (payroll estimate for insurance), and 14-025 (change in monthly minimum water fees), dated April 18, 2014. See id. at 61-62.

Plaintiff seeks declaratory relief, money damages, disgorgement of funds, restitution, and various forms of injunctive relief. See id. at 27-29.

**B. Procedural History**

Plaintiff paid the filing fee in this action and summons against all named defendants was issued without a screening order. See ECF No. 2. Summons was thereafter returned executed as to Defendants Puckett, Hanson, and Hornbrook Community Services District. See ECF No. 5. Process was served personally on each of these defendants by the Siskiyou County Sheriff's Office on January 31, 2021. See id. On February 11, 2021, the District Judge issued an order relating the instant action to Gifford v. Kampa, et al., case no. 2:17-CV-2421-TLN-DMC, and reassigning the instant action to the undersigned. See ECF No. 6. Gifford v. Kampa, et al., is set for hearing before the undersigned on April 13, 2022, on Defendants' motion to dismiss.

As of March 2, 2021, Defendants Puckett, Hanson, and Hornbrook Community Services District had not responded to the complaint and Plaintiff sought entry of defaults. See ECF No. 8. The Clerk of the Court entered default as to Defendants Puckett, Hanson, and Hornbrook Community Services District the same day. See ECF No. 9. Plaintiff thereafter filed the pending motion for default judgment as against these defendants. See ECF No. 10.

/ / /

/ / /

[3] Plaintiff repeats the use of the designation "Count XXI."

In March 2021, Plaintiff filed motions for extensions of time to effect service of process on Defendants Tulledo, Bowles, Dixon, Brown, and Dingman. See ECF Nos. 12 and 13. On May 3, 2021, Defendants Hanson, Puckett, Tulledo, Brown, Dixon, Dingman, Bowles, and Hornbrook Community Services District filed the pending motion to dismiss Plaintiff's complaint. See ECF No. 14. Concurrently with this motion, the same defendants – all defendants named in the action – filed the pending motion to set aside the Clerk's entry of defaults on March 2, 2021. See ECF No. 15. On February 7, 2022, the Court denied Plaintiff's motions for extensions of time regarding service of process because all defendants had appeared by way of the pending motions to set aside entry of default and to dismiss Plaintiff's complaint. See ECF No. 27.

## II. DISCUSSION

The Court first addresses Defendants' motion to set aside the Clerk of the Court's entry of defaults as to Defendants Puctkett, Hanson, and Hornbrook Community Services District. In their motion, Defendants contend:

> Defendants HORNBROOK COMMUNITY SERVICES DISTRICT, ROBERT PUCKETT, and MICHELE HANSON (collectively "Defendants") hereby move this Court to set aside the default judgment entered against them at Plaintiff's request pursuant to Federal Rule of Civil Procedure 55(c). This action remains in its infancy, and this Motion is being served concurrently with the responsive pleadings—in this case a 12(b)(6) motion—for all other Defendants in the case.
>
> Plaintiff's inconsistent service efforts in this case created confusion for these Defendants, and counsel was not aware that Defendants had been personally served until after counsel discovered that these defaults had been entered until after a routine review of the docket on PACER. All other Defendants in this case received Plaintiff's Complaint by mail, along with a Request for Waiver of Service. In light of those facts, and given Defendants' timeliness in moving to remedy this issue, good cause exists to lift these defaults and allow these Defendants to litigate these claims on the merits. As such, Defendants respectfully request that the Court grant the instant Motion to Lift Defaults, and deny Plaintiff's parallel motion for entry of default judgment.
>
> ECF No. 15, pg. 3.

Defendants' motion is supported by the declaration of their counsel, Ryan Matthews, Esq. See id. at 7.

Under Federal Rule of Civil Procedure 55(c), the Court has the discretion to set aside the Clerk of the Court's entry of default, which default is disfavored. See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). Good cause must be shown to set aside entry of default. See Fed. R. Civ. P. 55(c). Here, the Court finds good cause has been shown based on counsel's declaration indicating inconsistent service, specifically that some defendants were served by mail while the defaulting defendants were personally served. Good cause is also demonstrated by the defaulting defendants' diligence in addressing the defaults and appearing in this action by way of a responsive motion filed concurrent with their motion to set aside defaults. There is no indication in the record of an intent on the part of the defaulting defendants to delay a judgment on the merits.

For these reasons, the Court finds that Defendants' motion to set aside the entry of defaults as to Defendants Puckett, Hanson, and Hornbrook Community Services District should be granted. The Court also finds that Plaintiff's motion for default judgments as to these defendants should be denied as moot. Given these findings, the Court will address Defendants' motion to dismiss as to all named defendants.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

/ / /

/ / /

/ / /

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

In their motion to dismiss, Defendants argue Plaintiff's federal and state law claims all fail as a matter of law. See ECF No. 14-1.

**A. Federal Claims**

Plaintiff alleges various constitutional violations as well as violations of federal water laws. Defendants contend that all of Plaintiff's constitutional claims fail as a matter of law and that Plaintiff lacks standing to pursue claims under federal water laws. See ECF No. 14-1, pgs. 7-10.

1. Constitutional Claims

In federal Counts I (Violation of Right to Free Speech, Assembly, and Petition) and VIII (Retaliation), Plaintiff alleges infringements of his rights under the First Amendment. In federal Counts II (Deprivations of Due Process and Equal Protection; Unlawful Seizure), V (Deprivation of Due Process and Equal Protection), VI (Deprivation of Due Process and Equal Protection), VII (Deprivation of Due Process and Equal Protection), and XI (Deprivation of Due Process and Equal Protection; Illegal Modification/Ignoring of HCSD Bylaws), Plaintiff alleges violations of his due process and equal protection rights. In federal Counts III (Conspiracy to Deprive Right to Vote) and VII (Deprivation of Due Process and Equal Protection; Right to Vote), Plaintiff references the right to vote. In federal Counts II (Deprivations of Due Process and Equal Protection; Unlawful Seizure) and XII (Violation of Fourth Amendment), Plaintiff references his rights under the Fourth Amendment.

Defendants argue in their motion to dismiss that Plaintiff cannot sustain a claim for relief on any of these constitutional theories. See ECF No. 14-1, pgs. 7-10.

a. First Amendment

Plaintiff references First Amendment rights in federal Counts I and VIII. In Count I, Plaintiff alleges violations of his rights to free speech, assembly, and to petition for redress of grievances. In Count VIII, Plaintiff alleges retaliation. According to Defendants:

> A claim for violation of Plaintiff's First Amendment right to freedom of speech must be predicated on a showing that he was subjected to an adverse action with the effect of chilling speech, and that the adverse action has a substantial causal relationship with the protected activity. *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Here,

> Plaintiff has failed to plead facts that show any sort of causal relationship between the vaguely referenced exercise of his right to speak, to speak freely, and to petition at the public meetings of the board of the HCSD. (Complaint p. 15, ln. 20—p. 16, ln. 7.) Plaintiff has alleged no specific facts suggesting that any adverse action was taken as a result of his speech or petition, or that he was somehow barred from speaking or petitioning. *See Eclectic*, 751 F.3d at 996. To the extent that Plaintiff claims he has been unable to seek redress from the Courts, such a claim is patently ridiculous given the multiplicity of his litigation.
>
> As for the alleged infringement on Plaintiff's right to petition, it is unclear how this was in any way violated. Indeed, in articulating his cause of action, Plaintiff enumerates the many times he exercised his right to petition.
>
> ECF No. 14-1, pgs. 7-8.

i. Speech, Assembly, Petition

In Count I, Plaintiff alleges the Board Defendants, HCSD, Bowles, and Dingman, "in acting as set forth above in manners adverse to Plaintiff, did so willfully, with intent to interfere with, impede, coerce Plaintiff into abandoning, and in retaliation for, his exercise of statutory and constitutional rights to: speak freely; petition the government and courts for redress of grievances; and, his attempts to assert the rights to vote on those matters as provided for in the HCSD Bylaws." ECF No. 1, pg. 15. Plaintiff claims Defendants have thus violated his First Amendment rights to "lawfully-convened meetings; to speak freely; to petition for redress of grievances. . . ." Id. at 16. Defendants argue Plaintiff cannot sustain a claim based on violation of his rights under the First Amendment to freedom of speech, freedom of assembly, or to petition for redress of grievances. See ECF No. 14-1, pgs. 7-8.

While Plaintiff's complaint includes the conclusory assertions that his rights to speech, assembly, and petition have been infringed by Defendants, the complaint does not include any allegations of specific facts in support of these contentions. Plaintiff has not explained precisely how these First Amendment rights have been violated, or by whom. The Court also agrees that any claim that Plaintiff's right to petition to seek redress of grievances has been infringed is belied by Plaintiff's litigation history in the Eastern District of California alone.

Because it is not absolutely clear at this point that Plaintiff cannot plead additional facts in support of his First Amendment speech, assembly, and petition claims, the Court recommends Plaintiff be provided an opportunity to amend.

ii. Retaliation

In Count VIII, Plaintiff alleges retaliation. According to Plaintiff, Defendants took the actions alleged in the complaint, in part, to retaliate against him. See ECF No. 1, pg. 18. Plaintiff further alleges in Count VIII that "[t]hese Defendants acted to deny Plaintiff proper, timely, statutorily-required notice or opportunity to assemble, attend, and be heard concerning all HCSD meetings and business. . . ." Id. at 19. Defendants argue the complaint fails to set forth adequate facts to sustain a claim for retaliation. See ECF No. 14-1, pgs. 7-8.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate government purpose. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the plaintiff must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The plaintiff must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the plaintiff must establish the following in order to state a claim for retaliation: (1) the defendant took adverse action; (2) the adverse action was taken because the plaintiff engaged in protected conduct; (3) the adverse action chilled the plaintiff's First Amendment rights; and (4) the adverse action did not serve a legitimate purpose. See Rhodes, 408 F.3d at 568.

The Court agrees with Defendants that the complaint fails to set forth facts sufficient to state a First Amendment retaliation claim. Notably, Plaintiff does not allege any adverse action taken by Defendants as a result of Plaintiff engaging in protected activity. Again, the Court recommends Plaintiff be provided an opportunity to amend his retaliation claim.

/ / /

/ / /

/ / /

b. Due Process

In Counts II, V, VI, VII, and XI Plaintiff alleges violations of his due process rights. The Due Process Clause protects from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, Plaintiff must allege that he was deprived of a protected liberty or property interest. See Knappenberger v. City of Phoenix, 566 F.3d 936, 940 (9th Cir. 2009).

Defendants argue:

> . . . The protected interest(s) apparently alleged by Plaintiff are an ambiguous interest in flawless operation of a drinking water facility and perfectly even implementation of legal duties by public officers. Plaintiff alleges a right to "the proper and timely creation and retention of records," of which he was deprived, along with the right to have public officers "monitor and supervise the operations of the HCSD facilities and employees." (Complaint, p. 21-23.) None of these amount to the type of vested, specific property interest required to state a claim for relief for violation of procedural due process rights.

ECF No. 14-1, pgs. 8-9.

Defendants' objections to plaintiff's due process claims are well-taken. Nonetheless, given that the focus of Plaintiff's claims in this case appears to be the procedures connected with the HCSD and the fairness of its operations, it is possible that Plaintiff may be able to move forward on some kind of due process claim which is well-defined and allows Defendants to adequately answer. The current complaint falls short because Plaintiff does not allege a specific liberty or property interest which was deprived. The Court recommend that Plaintiff's due process claims be dismissed with leave to amend.

c. Equal Protection

In Counts II, V, VI, VII, and XI Plaintiff alleges violations of his equal protection rights. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165

(E.D. Cal. 2007) (applying minimal scrutiny to a prisoner's equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the defendants acted with the intent to discriminate against the plaintiff. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Defendants contend:

> Plaintiff has not alleged being a member of a protected class—indeed, the Equal Protection allegation is almost thrown in as an afterthought. There is no allegation that any law was applied differently to him than to others—the equal protection claim is entirely inapplicable to the facts alleged.

ECF No. 14-1, pg. 8.

Defendants' argument is persuasive. Here, Plaintiff does not allege facts to show, in essence, that he has been singled out among other members of his community for disparate treatment by the HCSD or individual defendants. Nor does Plaintiff allege any facts to indicate that the malfeasance about which he complains was committed by Defendants with the intent to discriminate against Plaintiff on any basis. The complaint contains no facts indicating that Plaintiff has been treated differently on account of race, nationality, gender, sexual orientation and/or identity, religious affiliation, disability, or any other recognized protected class.

Plaintiff's complaint concerns alleged malfeasance on the part of Defendants with respect to water services provided by the HCSD. The harms about which Plaintiff complains, such as lack of safe water, unfair water metering practices, and mishandling of public funds, among others mentioned in the complaint are generalized harms to the community at large, of which Plaintiff is a member, and not harms specific and unique to Plaintiff or a class of similarly situated people to which Plaintiff belongs. Rather than alleging that he is being treated differently

than others in his community, the entire basis of Plaintiff's complaint is that he is a "whistleblower" acting on behalf of the entire community of people being similarly harmed by Defendants' conduct. Plaintiff simply cannot sustain claims based on denial of equal protection, which the Court recommends be dismissed with prejudice.

d. Right To Vote

In Counts III and VII, Plaintiff alleges claims related to his right to vote. Defendants contend:

> Gifford's complaint also alleges a violation of Plaintiff's right to vote. This violation is apparently based on unspecified violations of HCSD bylaws. The gravamen of the cause of action are alleged secret meetings at which unspecified actions were taken that had an unspecified effect on unspecified persons. There are no factual allegations from which to discern the actual conduct Plaintiff complains of. This cause of action lacks facts sufficient to put Defendants on notice of what they are meant to have done wrong, and therefore falls short of the pleadings standards.
>
> ECF No. 14-1, pg. 9.

Under the Voting Rights Act of 1965, a plaintiff must allege invidious discrimination. See Mobile v. Bolden, 446 U.S. 55 (1980). Plaintiff has failed to do so here. Finally, to the extent the alleged denial of the right to vote stems from HCSD and the Board Defendants taking illegal or improper actions, Plaintiff has alleged no facts to indicate that he has been unable in any election to vote to replace HCSD board members. Because it is conceivable that Plaintiff may be able to plead additional facts in support of his voting rights claims, the Court recommends dismissal with leave to amend.

e. Fourth Amendment

In Counts II and XII, Plaintiff alleges "Unlawful Seizure" and violation of the Fourth Amendment. As to Plaintiff's Fourth Amendment claims, Defendants argue:

> Plaintiff's "Count XII: VIOLATION OF THE FOURTH AMENDMENT" is perhaps the most puzzling of all. Plaintiff claims, effectively, that by violating the Brown Act and the California Public Records Act, Defendants have effectively seized his "Legislatively-granted liberty interests" in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. This, of course, is nonsense. If Plaintiff has a claim for violations of the Brown Act or the California Public Records Act, he is, of course, welcome to bring it. In fact, he has

> brought such claims on multiple occasions. A Fourth Amendment claim does not serve as a de facto writ of mandate. . . .
>
> ECF No. 14-1, pgs. 9-10.

The Court agrees with Defendants that Plaintiff's references to a seizure in particular and the Fourth Amendment in general are puzzling. Plaintiff has simply not alleged any facts which would support claims under the Fourth Amendment. However, because Plaintiff may have yet undisclosed support for these theories, leave to amend is recommended here.

2. Statutory Claims

In Count IV, Plaintiff alleges violation of the federal Clean Water Act. Elsewhere in the complaint, Plaintiff references the federal Safe Drinking Water Act. Defendant argue Plaintiff lacks standing to raise these claims. According to Defendants:

> In order to establish standing under Article III of the United States Constitution, Plaintiff must show "(1) [he has] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and [(3)] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).
>
> ECF No. 14-1, pg. 10.

Defendants contend that Plaintiff's complaint fails to allege any concrete and particularized injury sufficient to confer standing. See id.

The Court agrees. Throughout the complaint, Plaintiff alleges mismanagement of the municipal water facilities and contends in only vague and conclusory terms that this has resulted in a threat to his water supply. Plaintiff has not, however, alleged facts describing any specific injury that is concrete and particularized to him. Plaintiff does not allege that he has, in fact, experienced inadequate water or that he has otherwise been actually injured by Defendants' conduct. Rather than specific allegations particular to Plaintiff, the complaint consistently sets forth generalized and conclusory statements about Defendant's alleged conduct without reference to any details addressing who did what, when, and how Plaintiff was injured as a result. Because Plaintiff has failed to allege any facts indicating a concrete and specific injury with reference to

the claimed violations of federal water laws, the Court finds that Defendants' motion to dismiss should be granted as to Plaintiff's federal statutory claims. See Friends of the Earth, 528 U.S. at 180-81; see also Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). Plaintiff's federal Count IV should be dismissed with prejudice.

Because it is possible Plaintiff can allege additional facts to establish standing, the Court will recommend granting Plaintiff leave to amend as to his federal statutory claims.

**B. State Law Claims**

Plaintiff asserts a litany of claims arising under state law, over which this Court could exercise supplemental jurisdiction if it decides to do so. Defendants argue that all of Plaintiff's state law claims fail as a matter of law. See ECF No. 14-1, pgs. 10-14.

Because, for the various reasons discussed above, the Court finds that Plaintiff has failed to plead cognizable federal claims, the Court declines to rule on the viability of Plaintiff's state law claims at this time. Defendants may renew their argument relating to state law claims upon a finding by the Court that Plaintiff has stated cognizable federal claims which should be answered. In the event Plaintiff is unable to state cognizable federal claims, the Court will consider whether to decline supplemental jurisdiction pursuant 28 U.S.C. § 1367(c)(3), in which case Plaintiff may pursue his state law claims in the appropriate state court of general jurisdiction.

**III. CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to set aside entry of defaults, ECF No. 15, be granted;

2. The defaults entered as against Defendants Puckett, Hanson, and Hornbrook Community Services District be set aside;

3. Plaintiff's motion for default judgment, ECF No. 10, be denied as moot;

4. Defendants' motion to dismiss, ECF No. 14, be granted as to Plaintiff's federal constitutional and statutory claims as follows:

a. Plaintiff's First Amendment claims (Counts I and VIII) be

dismissed with leave to amend;

b. Plaintiff's due process claims (portions of Counts II, V, VI, VII, and XI) be dismissed with leave to amend;

c. Plaintiff's equal protection claims (portions of Counts II, V, VI, VII, and XI) be dismissed with prejudice;

d. Plaintiff's voting rights claims (Counts III and VII) be dismissed with leave to amend;

e. Plaintiff's Fourth Amendment claims (Count XII and portion of Count II) be dismissed with leave to amend;

f. Plaintiff's federal statutory claims (Count IV and references elsewhere in the complaint to the Safe Drinking Water Act) be dismissed with leave to amend;

5. Defendants' motion to dismiss, ECF No. 14, be denied without prejudice as to Plaintiff's state law claims; and

6. Plaintiff's complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 2, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE